Alright, each side will have 15 minutes and you'll keep track of your own time, Mr. Cardin, whenever you're ready. Thank you, Your Honor, and may it please the Court. I'm Joshua Cardin on behalf of Dr. Mustafa. I'm trying to reserve three minutes for rebuttal. USERA protects our service members, be they full-time or reserve status, from exactly what YRMC did to Dr. Mustafa in this case. The trial court erred below as a matter of law in three different ways. First, by refusing to grant our summary judgment as to Dr. Mustafa's employee status with the hospital under the test articulated in Real v. Driscoll Strawberries. Second, by weighing or outright ignoring our disputed material facts related to the USERA and the similar state law AEPA claim, prohibiting discrimination against military service. And then finally, by dismissing our state law tort claims. Counsel, would you agree that both the federal and the state claims require an employment relationship rather than an independent contractor relationship? One hundred percent, Justice Brayboy. Okay. I have to say, frankly, I don't see any evidence that this was an employment relationship at the relevant time. The contract said it wasn't. The hospital gave your client a choice. Do you want to be an employee? Would you prefer to be an independent contractor? He said, no, I better talk to a tax advisor. The tax advisor said, better be an independent contractor. So he formed an entity and contracted through that. And the agreement says, with him as a member of this entity, this is an independent contractor arrangement. He explained why he preferred an independent contractor arrangement. And the contract expired. I truly don't understand your position that he was an employee at that time. Certainly, Your Honor. And the two parts I'll address there with that question. First is, under Real v. Driscoll-Strawberry, Congress made it clear USERRA gets the FLSA definition of employee. It's the broadest ever written into statute. There's a six-factor test we've briefed extensively. The label itself is simply irrelevant. Well, yes, but I'm not relying on the label. I mean, this is a person who creates an entity, and it's the entity that's paid, and it pays him. He deducted business expenses through the entity as an independent contractor. He didn't, you know, so I guess I see the realities the same as the label. And I'm really struggling to see your point of view on this. And that's the difficulty, Your Honor. If the label is all that matters, then that becomes the tail wagging the dog of the six factors. Because if we, I will, I can assure the Court, if Mr., excuse me, if Dr. Mustafa had signed the employment agreement, these same six factors would have to be analyzed. We would still have to do control. Well, that's what I'm asking you about. What is the reality that you're looking at that's different than the reality I've just described, which is that he's not even paid directly, he doesn't get health benefits, all these things that I've mentioned. Your Honor, the control aspect, what YRMC dictates, his available shifts. They tell him how he has to practice. They tell him whether he can sit or stand next to the patient. Even the contract administrator referred to his pay as payroll checks on page 25 of the second volume of the record. The hospital admitted factor six. He's an integral part of the hospital. He works inside the hospital. He doesn't provide any of his own equipment beyond a stethoscope. He uses all the same hospital equipment that the folks who opted for an employment agreement use. There's no difference. Let me ask you this. Even if we were to accept all of these facts and arguments that you're making to establish that Dr. Mustafa was, in fact, an employee for purposes of determining coverage by USERRA, he had a contract that expired. And that contract expired while he was away, and he was informed post-expiration that there would be no renewal. How does he get the benefit of a rehire when the contract has expired and it expired on its own terms and it was not going to be renewed, which the hospital has submitted argument, and there's evidence in the record, that it was not likely to renew that contract? Well, and there's the rub, Judge Desai. In the more recent case than this briefing, this court held in Clarkson v. Alaska Airlines once again that provisions for benefits to members of the armed services are to be construed in the beneficiary's favor. And the statute itself contains language that goes far beyond just contract and says the benefits of employment include status, include advantage, and it's those things that accrue by reason of either a contract or an employee policy plan or practice. I don't see how that relates to the expiration question. I mean, I have term law clerks who are here from August to August, and if one of them went into the military and came back in October and said, hey, I'd like my job back, the answer is, you know, you're done because your term expired. And I haven't really heard an answer to Judge Desai's question about why that doesn't do in your claim. And fair enough, Judge Graber. The reason is in this case it's not like the understood one- or two-year term of a long term. No, it's in writing. Well, it is in writing, but it's in writing in the context of a 15-year relationship. The hospital can't do its job without hospitalists. And throughout the record, in five or six different places, it's couched in terms of renewal. No one sees these relationships as expiring willy-nilly and then they just stop working with them. Counsel, I have a question. I'm glad you brought up that relationship. I note that Dr. Mustafa enlisted in the Army in 2007. He had already started his work with YRMC in 2005. He was deployed 2011, 2013, and 2019. Were there any other instances other than the most recent where he felt like, you know, they were adverse to him being in the military? Other than the statements that they made, which were in the record, those were some of the facts that the court below ignored. No, there's no other evidence. Well, I say that. There is one record evidence where the contract administrator specifically says, the situation with Dr. Mustafa has always been more of a challenge. Now, that's on page 29 of ER. So let me follow up on that. Was he becoming more challenging as we'll just take your word for it for purposes of this question, as an employee? I mean, was he getting more obstreperous? Was he having more issues with staff members or patients so that the reason for his term or for their refusal to extend the contract really has nothing to do with the fact that he was deployed, but maybe because he's honoree and he doesn't do well with patients. And so, Your Honor, to be clear, the word challenge in this context is in a completely separate area of the email where they talk about citizenship. Now, as to citizenship, the record is void of any comparator evidence. All we know is that there are apparently complaints that predate him being offered this contract and that there are a few anonymous complaints that patients themselves cannot make into this system that occur afterwards. None of which is he ever told about. And there's his direct testimony on that point. And the regulations for you, Sarah, say, okay, fine, yes, you can discharge someone for cause, but you've got to give notice to them. But, counsel, isn't that also consistent with his being an independent contractor? If you hire an independent contractor for a term of three years, you might not pass along every complaint that you receive because you're bound to keep them for three years unless you meet the terms of the contract, which are different than what's required to discharge an employee. And the answer to that is maybe. But this is a summary judgment case. We can't decide the case against my client on maybe the jury might see it differently. It's could the jury see it my client's way, which is he gets deployed, they immediately go ask about complaints. Hey, are there any complaints about this doctor? And then they don't do anything with those complaints until he comes back. And they say, hey, we really don't want to offer a contract. Oh, are there? They didn't think he was coming back because his term expired. I mean, it's kind of circular, I think. I think that the timing of the expiration, Your Honor, is just the fact that there was an end date. The testimony, the undisputed testimony from the contract administrator is everybody gets renewed. And we know that they needed him because they kept hiring hospitalists. They just didn't want him. He was becoming an inconvenience. Dr. Mustafa, you weren't here when we needed you back in the fall. That's the evidence in the record. And Clarkson, again, quotes very clearly that, yes, we understand frequent absences can be very inconvenient, considerable inconvenience. He's been deployed, though, at least two other times. Correct. Why now? Why in 2019 does it matter? Your Honor, it sounds like it built. That's how I think the reasonable inference should be drawn from the statement, oh, you're going out again? It's becoming a frustration. He had monthly reservist obligations. And I think the inference is that's what Ms. Orendorf was referring to as the challenge. He had to be accommodated for those monthly obligations, not just a long-term deployment to Afghanistan like what happened in 2019. So with this feature now, I haven't addressed any of the state law tort claims here. I will mention those briefly. Tortious interference with a contract is something that even the chief medical officer of the hospital can be liable for. We've cited the case law, Arizona cases, that just because there's a principal-agency relationship doesn't mean the principal can't be liable for tortious interference and also for aiding and abetting. I see my timer's ticked down to three minutes. Unless there's an immediate question, I will sit down. All right. Thank you. Thank you. We'll hear from you on rebuttal. Mr. Dowell? May it please the Court? Your Honors, I'm Eric Dowell. I represent the appellees, Yuma Regional Medical Center and Dr. Bharat Mutha. Excuse me. So I think what the district court did, which was probably a good place to start, was just to assume for purposes of the analysis that Dr. Mutha was an employee because the district court reasoned we still have to go through those facts. I understand why the district court may want to do that because it knows it's likely going to be reviewed by this court. But our court doesn't need to do that, correct? I mean, if we decide that Dr. Mutha was, in fact, an independent contractor and not an employee, we could end the inquiry there, correct? Absolutely. And we believe that's where the inquiry should end. I think the record has been extensively briefed by both parties on that issue, and the six-factor test and so forth. I think, as Your Honor raised, this is a situation where Dr. Mutha worked as a hospitalist, as an employee for other companies. He was staffed at Yuma Regional Medical Center for that 13-year period. It was only when those contracts then did not renew that the hospital then extended an invitation to him to either become an employee or an independent contractor. So this issue about which we had some conversation with your friend on the other side in terms of the expiration, this is important because it matters for purposes of whether he had an expectation to have an automatic renewal or for it to be renewed, given that it expired during his absence. So when considering Yuma Regional Medical Center's three proffered reasons for choosing not to renew his contract, the lack of need, in my view, seems to be the weakest, considering that the hospital did hire other hospitalists after March 2020. So assuming we don't buy this reason as a basis for not renewing the contract, is the remaining rationale that the hospital decision to not renew it sufficient to show that it would have taken the same action without regard to the employee's protected status? Well, I think the first question that we have to address is what's the adverse action here? And the adverse action is not denying Dr. Mustafa the right to come back as an independent contractor in March of 2020. The adverse employment action, as alleged, is the failure of the hospital to renegotiate a new contract with him in September 1st of October of 2019. That's the adverse action. Keep in mind that the notice, though, that Dr. Mustafa provided or that was sent to the hospital, which the hospital received in January of 2019, indicated that he would be out on a deployment for 120 days. The hospital fully expected Dr. Mustafa to be back about the 1st of October, maybe mid-November. He didn't come back. He didn't even indicate to the hospital that he had a desire to come back and renew his contract. Counsel, let me interrupt you there, because you came up with the date that I wanted to ask you about. So January 9th, 2019, the Army issues notice informing YRMC about Dr. Mustafa's next deployment, and you're right. They said it's going to be 120 days. You're expecting him to return in July of 2019. Short six weeks later, February 25th, 2019, in response to an email from YRMC's vice president of patient care about Dr. Mustafa's, and I quote, many issues with staff and patients, Dr. Magoo states, and again I'm quoting, yes, Dr. Mustafa is being slowly phased out of the schedule. Hospital leadership is aware. So six weeks after you're told this doctor has to be deployed again or will be deployed again for 120 days, there's already something going on saying we're going to not, we're getting rid of him. Well, a couple of things on that. The email of which you refer that Dr. Magoo made that comment that we are slowly phasing him out of the schedule relates specifically to his response about the patient complaints against Dr. Mustafa, about the failure of Dr. Mustafa to respond adequately to staff and to other patient complaints. So as you heard me ask Dr. Mustafa's counsel, what changed? He's been working for the hospital since 2007, I believe, and it's at 2019, right about the time that the Army is letting you know we need him again, what changed? Did he become more obstreperous? Was he ornery with the patients, with staff? Did he change or did leadership say we're done here? I think there were increased complaints against Dr. Mustafa. The challenge that Mr. Carden referenced in that email, if you look at the record, what that was in reference to was shifts. Dr. Mustafa was told when he entered into the independent contractor relationship that as an independent contractor, you don't necessarily get to pick your shifts. You basically get what's left over from whatever we give to the employed physicians. So he was upset after he entered into this agreement for not getting the number of shifts that he thought he could expect. And it's in response to that email where this comment of, well, he's becoming more of a challenge, he doesn't seem to understand that as an independent contractor, you can't just have the same exact privileges that an employed physician would have. And that's where that comes from. So I think the answer is yes. Certainly there was increased complaints about him, not only from staff but by patients. And then he was becoming challenging because of his treatment of the administration in terms of the shifts that he believed he should be getting but wasn't getting. Again, going back to Dr. Magoo's email though, there is not one shred of evidence in the record to suggest that that comment that we are phasing him out of the schedule made almost 40-something days later. And this is only after the notice of deployment. There's no evidence in the record Dr. Magoo even knew about that deployment order. So he makes this comment in response to an email about how difficult Dr. Mustafa has become because of the complaints made against him. That's the only evidence in this record to suggest, well, it doesn't even suggest at all, that that military service played any factor, much less a motivating or substantial factor, in the decision not to extend a new contract to him in November when he came back. The comment that opposing counsel makes that the service of Dr. Mustafa became frustrating or burdensome or things of that nature, there's just no evidence of that. There's no evidence of that at all. In fact, the hospital — Well, I think Judge D'Alba's question kind of goes to that point, which is the contemporaneous or close timing between his notice that he's leaving again and then the restrictions on his schedule really kind of is at least something. And I think what your friend on the other side is arguing is isn't that something that the jury ought to hear? Whether or not, in fact, it was a causal connection or the hospital would have made the decision not to renew his contract or given the shifts regardless. The indication that he's becoming a challenge based on the shifts, I believe, was a year earlier. I think it was in 2018, if I recall. So that's when Dr. Mustafa was — almost immediately after he gets into this contract. It might have even been 2017, now that I recall. He gets into this contract. He's now complaining to staff that he's not getting the shifts that he believes he's entitled to. And that's when they explain to him, no, look, you're a contractor. You get whatever is left over here. And as was pointed out by the Court, there's no evidence of any hostility or frustration about his military service. And he's been on deployment at least three times. Tell me, do they need to say that they're sending an email giving him fewer shifts because he has just announced that he's leaving again for reservist duty? I mean, do they need to say that for there to be a causal connection? Well, keep in mind that that's a very big timing issue. He gets the orders to deploy come in January of 2019. The challenging issue where he's complaining about shifts comes at least a year or two earlier than that. So, again, he's becoming to be a problem based on his attitude and his expectations of getting the right schedule, getting the number of hours he expects, and so forth. There's absolutely no evidence, though, in this record that Dr. Mustafa or that the hospital expressed any hostility or animus at all relating to his military service. Mr. Cardin said he went out on monthly deployments or at least practice deployments. He went out at least in three prior deployments while he served as an employee of other staffing companies and served at the hospital. So where is the evidence that the hospital was somehow frustrated or burdened by his military service? Again, the evidence in the record is this. There's a challenge. He becomes a challenge well before January of 2019. There's the email in February, at the end of February of 2019, by Dr. Magoo, which we've discussed. And then there's exchange of discussions back in November when they believe he's going to be coming back, but yet never informs the hospital that he is, even though he admits that he should have and could have. There's discussion then because that's when they expect him to come back and they expect him to request a renewal or new contract. And they've made the decision there that we're not going to do that. Based on all of this, it's just become, he's just become this person that we don't want in our environment. We don't believe he's right for it. It's not because he's going out on deployment. There's no evidence of that at all. And then he gets his deployment extended twice without providing any notice whatsoever to the hospital. So as far as the hospital is concerned, he comes back in, or is supposed to come back in November, gets his deployment extended twice, and then doesn't even provide notice that he wants to return until the end of February of 2020. So first of all, as to the other hired people, the fact that people were hired any time before February of 2020 is irrelevant. They didn't even know and had no knowledge, there's no knowledge in the record, that he was even having a desire to come back and work. What about the other people hired in March of 2020? I believe there was only one, if I recall in the record. But again, Dr. Mustafa, they had the discussion with him, I believe, on March 10th, 2020. And I believe there was one other person that received a contract at the end of March of 2020. I don't remember the date. And then there were a couple of other people hired later in the year. But keep in mind, this was also, again, in the midst of the COVID pandemic. And the record also indicates that as a backup plan, they would consider using Dr. Mustafa and maybe offering him another independent contractor agreement to fill in for other hospitalists because they were getting sick, COVID. And so I think that right there proves they don't have any hostility towards his military service. What they have hostility to is his poor patient care and his attitude towards staff and toward patients. And so that's why they didn't renew his contract. Well, they didn't, he didn't even ask to have his contract renewed. In fact, when he came back in February, at the end of February 2020, he just said, I'm ready to start work next month, middle of March. Can I ask you one question about the written contract itself? Assuming that it is an independent contractor agreement, I did not see in the contract any guarantee of renewal or any criteria for renewal, but merely a statement that the way to renew was by mutual consent in writing as an addendum to be attached. Is there something I'm missing, or is that all there is about renewal? You're not missing anything, Your Honor. In fact, that is it. It's a contract that expired on its own terms. It had no automatic renewal provision in it at all. It even allowed for early termination by both parties, should they desire to do that. Or for cause, which was carefully defined. Correct, correct. Counsel, you make a lot of mention of poor patient care as one of the reasons why his contract, well, the issues that they were having. When did that start? Well, I believe it was, I don't have the dates in front of me, but I believe it actually occurred prior to the contract being formed with him and then after. And that's one of the arguments that counsel is making. They're saying, well, you know, there were complaints about him before, and you still entered into a contract with him. Yes. Then there were further complaints, and there were further challenges because he was complaining about the schedules that he wasn't getting and expected. So does that mean then before October 1, 2016? Yes, yes. And when did you share these complaints with him? Well, he knew of at least two of the complaints. How many were there? I believe there were six complaints or more, I think about six complaints. Since 2016, prior to 2016, or since his entire employment there in January of 2009 until? No, the complaints were more contemporaneous. They were, I believe, in 2015 and 2016 and then the others later on. The record itself would explain that, but I apologize. I don't have those exact dates with me. But I guess the evidence is what we need to look at, and the question is, is there any evidence at all that Dr. Mustafa's military service was a motivating factor in any decision not to renew or extend a contract to him? I'm just trying to figure out, counsel, if these complaints, these six complaints, are pretext. Going back to those six complaints and saying, no, no, no, we didn't do it because of you, Sarah, or any of the, you know, his military service. We did it because people were complaining about him. That's what I'm trying to figure out. When were these complaints made? When was he made aware of these complaints and whether or not, you know, they are pretext or a justifiable reason to not extend his contract? Well, the only suggested evidence that they are pretext is just simply Mr. Carden's statement that they were anonymous complaints and that patients themselves couldn't go into the hospital's computer system and make those complaints. Is that accurate? I believe it is accurate. Yeah, I don't believe patients actually go in and make complaints against their doctor. They complain to a staff member, a nurse, or another doctor, and then those are put into the system and recorded, which is pretty much standard practice in any event. I've only got a couple of minutes left, but I do want to come back to the independent contractor issue. I think you're over time, actually, but I'm happy to give you a minute if you want to wrap up and make a closing statement. Oh, okay. I think that the analysis of the state law claims, the tort claims, is pretty well set out and fully briefed. I don't know that we really need to address that. Obviously, the USERRA claim and the AEPA claim rely upon the fact or the conclusion that Mr. Carden draws that he has to be an employee for those statutes to even apply to him. We submit that there's plenty of evidence in this record to show that he was not an employee, that he was, as was stated at the beginning, an independent contractor by his own choosing, by the only advice he received from his certified public accountant, and by the fact that he wanted those tax advantages and he wanted the deductions for his expenses and he wanted the better income stream, and he wanted the flexibility of the hours, for which he complained about then as soon as he got the contract. He wanted to be able to submit the hours he would work and then work when he wanted to or work elsewhere where he wanted to and not have to be, you know, having to be compliant with any hospital requirements of when he actually had to work. I believe that the district court properly granted summary judgment, denied the plaintiff's summary judgment motion, and I respectfully request this Court to affirm that decision. Thank you, Mr. Dowell. And, Mr. Carden, you've got three minutes for rebuttal. Thank you, Your Honor. First, to Judge DeAlba's point, the patient complaints, the existence of them might be pretext, but more importantly, the reason why they're pretext in this case is because he's never told about them. He finds out about them in the course of this lawsuit, but he's never told, he's never coached, he's never disciplined, he's never written up. These complaints are meaningless to his day-to-day work because he never hears about them. And as to Dr. Magoo's email saying Dr. Mustafa is being phased out of the schedule in February, they don't actually phase him out. He works full-time right up until the time he leaves for deployment. They needed him. They needed him afterwards. They just didn't need someone who was going to be an inconvenience to them. To Mr. Dow's point, I do want to disagree and say Dr. Mustafa was not told. He was not told at any point in time that by signing an independent contractor agreement, he would be considered a part-timer. Pam Orendorf puts that in writing to the hospital leadership on page 30 of the second volume of the record. On at least one occasion previously, he had worked past the end of his contract expiration, that's on pages 138 and 39 of volume two of the record, without a renewal. This was a routine relationship that lasted for 15 years. The permanence factor should establish his employee status. It's not enough to look at the face of the document. We have to look at the economic realities of the actual relationship. This was somebody who the then current hospital leadership in 2019 and 2020 decided that they didn't want to have around anymore. Not hospitalists in general. They needed those. They needed them so badly, they went out and put out temporary work for hospitals that Dr. Mustafa tried to get, and they still denied his ability to work as a hospitalist for them, despite his track record there. The complaints themselves cannot serve as the justification for non-renewal. Again, notice that no one ever says, well, this agreement's dead. We've got to start from scratch. In every circumstance, it's referred to as a renewal. Noyes, this court's decision in Noyes says all of this evidence has to be looked at cumulatively. Not each of these things can be looked at in isolation, and we feel that the trial court failed to do that below. And so we would ask for reversal and remand with the holding that Dr. Mustafa was an employee of Yuma Regional Medical. Thank you. Thank you, counsel. This case is now submitted, and this concludes our arguments for this morning. Thanks again to everybody.
judges: GRABER, DESAI, ALBA